# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| STOPINC AKTIENGESELLSCHAFT, ) | |
| ) | |
| Plaintiff, ) | Cause No. 2:14-CV-238-PPS-JEM |
| ) | |
| v. ) | |
| ) | |
| J.W. HICKS, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This is a patent infringement case dealing with equipment used in processing molten metal. The invention at issue is a slide gate on a container that holds molten metal. Basically, the slide gate is the part of a large metal container that opens and dispenses the liquid metal inside into whatever other containers are being used. Plaintiff Stopinc Aktiengesellschaft is a Swiss company that, among other things, manufactures these slide gates. Stopinc patented this invention in 2002 and now claims that Defendant J.W. Hicks, Inc. is infringing by producing essentially the same type of slide gate. I say "essentially" because the parties agree that there are differences between the Stopinc and J.W. Hicks slide gates. The fact that there are differences between the products is not, however, in and of itself necessarily problematic because Stopinc's legal theory is under the doctrine of equivalents. So Stopinc can sue J.W. Hicks for infringement even if the products are not 100% the same. J.W. Hicks contends

1

that the doctrine of equivalents is unavailable to Stopinc. To this effect, J.W. Hicks has filed a Motion for Summary Judgment (DE 35) claiming that during the prosecution of Stopinc's patent, it affirmatively represented to the Patent Office that its invention did not include the feature that allegedly makes J.W. Hicks' slide gate similar to Stopinc's, so the doctrine of equivalents can't apply. That's the primary motion before me today. Since the doctrine of equivalents is the only theory of infringement that Stopinc relies upon, this motion is potentially case dispositive.

This matter has been fully briefed, including some supplemental filings received from the parties (DE's 51-52) and I have also heard oral argument (DE 50). After reviewing all of those materials, and for the reasons discussed below, I agree with J.W. Hicks that the doctrine of equivalents isn't available to Stopinc. I will therefore **GRANT** the motion (DE 35) regarding its request for summary judgment. I will, however, **DENY** J.W. Hicks's request for attorneys fees. Also before me is J.W. Hicks' Motion to Strike (DE 39) regarding a declaration Stopinc attached to its response brief. I will **DENY** this motion, as well.

## Background

*The Invention*

As I mentioned above, this case deals with slide gates on molten metal containers. Readers looking for a more in-depth discussion of the technology are directed to the parties' briefing (DE's 35-38, 51-52) and Stopinc's patent (United States Patent No. 6,422,435). But I'll briefly go through the ins and outs of what I understand

this invention entails.

A slide gate is essentially a small door on the bottom of a container (also commonly referred to as a "ladle") holding molten metal that either holds the metal in or lets the metal pour out, depending on circumstances. *(See generally* Wikipedia, "Ladle (foundry)," https://en.wikipedia.org/wiki/Ladle_(foundry) (last visited September 16, 2015); U.S. Patent No. 6,422,435 Background.) In large metallurgy facilities and other facilities using molten metal, these giant containers typically move down an assembly line, dispensing the liquid metal into other vessels as they go. *Id.* The slide gate opens when the container is ready to pour the liquid metal, closes once it's finished and then the ladle moves on to the next vessel. *Id.* One problem Stopinc sought to remedy with its slide gate is that these gates used to have to be mounted onto the ladle using a large framing system that was costly to produce. (*See* U.S. Patent No. 6,422,435, 1:24-27.) Stopinc, however, simplified its slide gate, making it smaller and allowing it to be directly mounted to the ladle without using a frame. (*Id*. at 1:30-55.) It patented this invention in U.S. Patent No. 6,422,435 (the '435 Patent) on July 23, 2002. Below is a drawing of the invention from the face of the '435 Patent, and I've added a circle around one of the two slide gates.



In this image, molten metal flows out of the opening labeled No. 12. The opening is closed off at various points by the refractory plates, labeled Nos. 22 and 23.



The slide gate operates so that rollers (No. 27) roll along a track (No. 36), such that in this image, the slider unit (No. 30) would roll on a track towards you or away from you. This action either opens or closes the refractory valve plates, allowing liquid metal to flow out of the opening (No. 12) or keeping it inside of the container, depending on whether the plate is opened or closed.

Only Claim 1 of the '435 is asserted in this litigation. It states:

> A sliding gate valve to be mounted to a container for containing molten metal, comprising:
>
> a housing portion to be secured to the container;
> a slider unit mounted to said housing portion and having guide tracks;
> a first refractory valve plate and a second refractory valve plate inserted
>     between said housing portion and said slider unit and operable to
>     open and close the sliding gate valve; and
> a plurality of mounting components aligned perpendicular to said slider
>     unit so as to mount said slider unit to said housing portion such
>     that said slider unit is slidable with respect to said housing portion,
>     each of said mounting components having:
> a first end secured to said housing portion;
>     a spring element for pressing said first refractory valve plate and
>     said second refractory valve plate against each other;
> a second end opposite said first end; and
> a guide element on said second end for riding on a respective one
>     of said guide tracks of said slider unit, said mounting components
>     being arranged such that two guide elements are positioned on
>     each of two opposite sides of said refractory valve plates;
> wherein said slider unit is operable to be moved so as to position
>     said guide elements at a location whereat a height of said guide
>     tracks is lower than a height of a remaining portion of said guide
>     tracks so as to relax said spring elements to allow release of said
>     slider unit from said housing portion.

('435 Patent, Claim 1.)

That's a lot to unpack, but for the purposes of J.W. Hicks' motion, the most important thing to understand is that the guide tracks are on the slider unit and the "guide elements" (*e.g.* rollers, wheels, or balls that slide on the tracks) are on the mounting components which are in turn connected to the housing unit.

*The Prosecution of the '435 Patent*

The prosecution of the '435 Patent was fairly straight-forward. Stopinc submitted fourteen claims, which were rejected by the PTO Examiner based primarily on three prior art references. (DE 36-8, '435 Pros. at 00110-11.) Stopinc filed an amendment cancelling the fourteen claims and submitting new claims 15-40. (*Id*. at 00128.) The Examiner allowed those claims and the patent issued. J.W. Hicks claims that during this process, Stopinc sacrificed the claim elements that make its product similar to Stopinc's.

When Stopinc filed its original patent application in July 1999, Claim 1 read:

> Sliding gate valve for a container containing molten metal including a housing portion, which is securable to the latter, and a slider unit, which is longitudinally movable with respect to it, in which respective refractory valve plates are insertable, which may be pressed against one another by means of spring elements and serve to open and close the sliding gate valve, characterized in that the slider unit is longitudinally movably mounted on the housing portion by *a plurality of mounting means aligned perpendicular to it, these mounting means being secured either to the housing portion or the slider unit and oppositely having guide means which slides on a respective guide track constructed on the slider unit or on the housing portion.*

(DE 36-8 '435 Pros. at 00023 (emphasis added).)

As the italicized language indicates, in the original application, the guide tracks and mounting means could be located *either* on "the housing portion or the slider unit." *Id.* For example, the guide tracks could be on the housing portion and the mounting means on the slider unit, or, vice versa, the guide tracks could be on the slider unit and the mounting means on the housing portion.

The Examiner rejected all fourteen claims. (DE 36-8 '435 Pros. at 00107-111.) Although the Examiner rejected the claims on multiple grounds, most relevant to the issue I've been asked to resolve is this statement:

> Claims 1-14 are rejected under 35 U.S.C. § 102(b) as being anticipated by any of Holtermann et al, Kleebatt and Plattner et al. Each of Holtermann et al., Kleebatt and Plattner et al. teach a sliding gate valve for a molten metal container including the housing portion, a slider unit longitudinally moveable with respect to the housing portion, where the slider unit is connected to the housing portion by a plurality of mounting means secured to either of the housing portion or the slider unit and guide means on either of the slider unit or housing portion, thereby showing all aspects of the above claims . . . .

(*Id.*) In other words, the Examiner found that the prior art already disclosed slide gates where the mounting means could be attached to either the housing portion or slider unit, and guide means that could be attached to whichever one the mounting means wasn't.

Stopinc responded by cancelling all fourteen claims and submitting new

7

claims 15-40.  In so doing, Stopinc stated:

> The Examiner rejected claims 1-14 as being anticipated by any one of the Holtermann reference (USP 5,421,563), the Kleebatt reference (USP 5,141,139), and the Plattner reference (USP 5,836,485). However, as indicated above, the original claims have been cancelled and replaced with new claims 15-40, including new independent claims 15 and 29. Although the new independent claims generally correspond to original independent claim 1, *the new independent claims have been drafted to clarify the scope of the original claims and, more specifically, to clarify the arrangement of the mounting components and the slider unit.* Thus, for the reasons discussed below, it is respectfully submitted that *new claims 15-40 are clearly patentable over the prior art of record.*

(*Id*. at 00135-36 (emphasis added).)

Stopinc also distinguished each prior art reference with the following explanations:

- "However, the Holtermann reference does not disclose or suggest mounting components each having a spring element and a guide element, and being arranged as recited in independent claims 15 and 29." (*Id*. at 00136.)

- "However, the Kleeblatt reference does not disclose or suggest mounting components for mounting a slider unit to a housing portion, in which each of the mounting components has a spring element and a guide element, and in which the mounting components are arranged as recited in Independent claims 15 and 29."  (*Id*. at 00136-37.)

- "However, the Plattner reference does not disclose or suggest mounting

8

components arranged as recited in independent claims 15 and 29." (*Id*. at 00137.)

- "As discussed above, the Holtermann reference, the Kleebatt reference, and the Plattner reference do not disclose or suggest a plurality of mounting components arranged as recited in claims 15-40. Therefore, one of skill in the art would not be motivated to modify or combine the references in a manner that would result in claims 15-40. Accordingly, it is respectfully submitted that new independent claims 15 and 29, and the claims that depend from therefrom [*sic*], are clearly patentable over the prior art of record." (*Id*.)

In essence, the arrangement of the mounting components and the slider unit (including the guide tracks) distinguished the amended claims from the prior art. And in new Claim 15 (which eventually issued as Claim 1), the mounting components included the "guide elements" (*e.g.* rollers, balls, wheels, etc.) and were attached to the housing portion, and the guide tracks were specifically located on the slider unit. This is in contrast to original application Claim 1 which stated that the mounting means (which contain the guide elements) could be attached to either the housing portion or the slider unit, and then the guide tracks would be located on whichever component didn't have the mounting means.

In response to Stopinc's amendment, the Examiner allowed the new

claims 15-40 (DE 36-8 '435 Pros. at 00143), and those claims now appear as claims 1-26 of the '435 Patent.

*This Litigation*

Stopinc filed this patent infringement suit in July 2014. The only independent claim asserted is Claim 1, so that is the only claim I need to concern myself with. *See e.g. Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n. 9 (Fed.Cir.1989). The parties agree that Stopinc's only theory of infringement is on the basis of the doctrine of equivalents and *not* any literal infringement. (*See* DE 36-6 at 8.) That's because J.W. Hicks' slide gate differs from the Stopinc slide gate in at least one key way: in J.W. Hicks' slide gate, the guide tracks are located on the mounting components (which in turn is attached to the housing portion), and the guide elements (here, rollers) are located on the slider unit. (DE 36 at 7-8; DE 36-6 at 8.) In other words, the guide tracks and guide elements have the opposite orientation of Claim 1 of Stopinc's patent.

J.W. Hicks argues that this orientation is of particular significance. This is because when Stopinc amended its original application Claim 1, and required one orientation of the mounting components instead of allowing the mounting components (containing the guide elements) to be attached to *either* the housing unit *or* the slider unit, Stopinc sacrificed the other orientation. And since that "other" orientation is how J.W. Hicks' product is set up, the doctrine of prosecution history estoppel prevents Stopinc from reclaiming that "other"

orientation. In other words, J.W. Hicks argues that because Stopinc told the PTO that its slide gate was set up one way, it gave up the ability to sue someone whose slide gate is set up the other way. So the precise issue I'm asked to resolve is: did Stopinc give up its ability to assert an infringement claim under the doctrine of equivalents where the mounting components and guide tracks are located on the housing portion and the guide elements are located on the slider unit? Since Stopinc asserts infringement under only the doctrine of equivalents (*i.e.* it has asserted no claim of literal or direct infringement), the answer to that question is potentially case dispositive. So at bottom, if I find that Stopinc can proceed under the doctrine of equivalents, the case goes forward as usual. But if I find that the doctrine of equivalents is not available to Stopinc, then I must dismiss this matter since Stopinc would no longer have any theory of infringement. (*See e.g.* DE 36-6 at 8, Infringement Contentions, (Stopinc: "Claim 1, 7 and 11 are not literally infringed . . . . The known equivalence of reversal of parts supports infringement under the doctrine of equivalents.").

**Discussion**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine dispute about a

11

material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Generally speaking, a product infringes a patent only if it meets every element of the asserted claim(s) – in essence, only if it's the same as what is described in the claims. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed.Cir.2007) (citing *Warner–Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17, 40 (1997)), *overruled on other grounds*, *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed.Cir.2012) (en banc). That's known as direct or literal infringement. A product that does not literally or directly infringe a claim, however, may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused product either literally or equivalently. *See Warner-Jenkinson Co.*, 520 U.S. at 40. So if the accused product is essentially the same as – but not identical to -- the patented product, it may still infringe.

But there are limits as to whether a plaintiff can claim infringement via the doctrine of equivalents. For example, and of particular relevance to this case, prosecution history estoppel prevents a patentee from recapturing through the doctrine of equivalents the subject matter that the applicant surrendered during prosecution. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002). It presumptively applies when the applicant makes a narrowing claim

amendment related to patentability. *Id*. at 736-37. What all this adds up to is that a plaintiff can't tell the PTO that its product does *not* do or contain a certain thing in order to overcome some prior art, and then turn around and claim that a product that does or contains that very thing infringes the patent. To hold otherwise would allow the patentee to have his cake and eat it still.

A patentee bears the burden to rebut the presumptive application of prosecution history estoppel by establishing one of three exceptions by a preponderance of the evidence. *Festo,* 535 U.S. at 740-41; *Integrated Tech. Corp. v. Rudolph Tech., Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013). Whether a patentee has rebutted the presumption is a question of law, making it well-suited for summary judgment. *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed.Cir. 2005). The parties agree that only one of the three exceptions is at issue here: "the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question." *Festo,* 535 U.S. at 734; DE 37 at 16.[1] In other words, if the patentee narrowed its claim to get around some prior art for

---

[1] Because Stopinc claims that this case falls under this second exception to prosecution history estoppel, it appears to also admit that its amendment narrowed this claim, since the presumption applies to only a narrowing amendment. And in any event, I find that this amendment is narrowing because a claim allowing only one orientation of components is certainly more narrow than one that allows two separate orientations. *See Integrated Tech.*, 734 F.3d at 1357-58. Stopinc makes some arguments about how it didn't really sacrifice the other orientation because it kept the alternate orientation in a separate claim, which kind of sounds like it's arguing that it didn't narrow the claims, but that doesn't matter for evaluating Claim 1. All that matters is what is claimed or not claimed in Claim 1 – the only asserted claim – because "infringement and validity analysis must be performed on a claim-by-claim basis." *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

13

a purpose that wasn't really related to the equivalent it now claims is infringing, courts won't find that the patentee gave up that claim scope.

The parties also agree that claim construction is unnecessary to decide this issue. (*See* DE 36 at 1; DE 45 at 1) When the movant and nonmovant agree on the meaning of the relevant term, a court need not formally construe the claims to decide a motion for summary judgment of noninfringement. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed.Cir.1999) (the only claim terms a court need to construe are those "in controversy, and only to the extent necessary to resolve the controversy."). Therefore the timing of this motion is appropriate.

The tangential relation exception is "very narrow." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1342 (Fed.Cir.2007). The key question is "whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed.Cir.2003) (en banc). "[A]n amendment made to avoid prior art that contains the equivalent in question is not tangential." *Chimie*, 402 F.3d at 1383 (quoting *Festo*, 344 F.3d at 1369).

The tangential relation inquiry "focuses on the patentee's objectively apparent reason for the narrowing amendment," which "should be discernible from the prosecution history record." *Festo*, 344 F.3d at 1369 (internal citations omitted). And where the prosecution history record is ambiguous, the

presumption is not rebutted. *EMD Millipore Corp. v. Allpure Tech., Inc.*, 768 F3d 1196, 1204 (Fed. Cir. 2014) *citing Warner-Jenkinson*, 520 U.S. at 33. Here, Stopinc has not successfully rebutted the presumption that prosecution history estoppel applies. As is clear from the prosecution history discussed at length above, Stopinc narrowed original application Claim 1 to avoid prior art that contained the alleged equivalent.

Original application Claim 1 allowed two different arrangements for the mounting components/guide elements and the guide tracks – they could be attached to either the housing portion or the slider unit. The Examiner then rejected that claim because the prior art already disclosed "a slider unit longitudinally moveable with respect to the housing portion, where the slider unit is connected to the housing portion by a plurality of mounting means secured to either of the housing portion or the slider unit and guide means on either of the slider unit or housing portion, thereby showing all aspects of the above claims . . . ." (DE 36-8, '435 Pros. at 00107-00111.) In response, Stopinc amended its claim, requiring that the mounting components (containing the guide elements) be mounted to the housing portion, and that the guide tracks be located on the slider unit. (DE 36-8 at 00129; DE 36-1, '435 Patent Claim 1.) In so doing, Stopinc could not have been clearer in affirmatively stating that it amended its claim "to clarify the arrangement of the mounting components and the slider unit." (DE 36-8, '435 Pros. at 00135-00136.) And in distinguishing the

15

specific prior art cited by the Examiner, Stopinc repeatedly argued that the new claim was "clearly patentable over the prior art of record" because of the arrangement of the mounting components and guide elements. (*Id*. at 00136-37.)

That arrangement of the mounting components and guide elements is the exact equivalent in question. The patent requires that the guide elements be on the mounting components and the guide tracks be on the slider unit. The J.W. Hicks' product instead has the guide elements on the slider unit and the guide tracks on the mounting component, and Stopinc has deemed that an equivalent arrangement. Since "an amendment made to avoid prior art that contains the equivalent in question is not tangential" *(Chimie*, 402 F.3d at 1383 (quoting *Festo*, 344 F.3d at 1369)), Stopinc has failed to rebut the presumption that prosecutorial history estoppel applies.

Stopinc's express representations that the amendment to the arrangement of the mounting components and guide elements was made to overcome the prior art torpedoes its case. Nothing in *Insitutform Technologies v. CAT Contracting, Inc.* — one of only a handful of Federal Circuit cases finding an amendment to be merely tangential — mandates a different result. There, the court found significant that there was "no indication in the prosecution history of any relationship between the narrowing amendment and . . . the alleged equivalent in this case." 385 F.3d 1360, 1370 (Fed. Cir. 2004). And therein lies the rub – here, Stopinc expressly stated that the prior art did not disclose the

16

arrangement it had chosen for the mounting components and guide elements, along with the spring element. That admission is dispositive. *Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1218 (Fed. Cir. 2008) ("The applicant argued that the claimed invention was distinguishable from the prior art based on the performance of both pitch calculation and pitch removal during each pulse-forming iterations. Thus, the purpose for the amendment is not unrelated to the alleged equivalent.") And even if Stopinc could point to some ambiguity or debate about what "arrangement" it was talking about, an ambiguous statement isn't enough to overcome the presumption. *EMD Millipore Corp.*, 768 F.3d at 1204.

Not so fast says Stopinc. Stopinc argues that its amendment *was* tangential to the equivalent because the real reason it amended its claims was to add a spring element to the mounting components. (DE 53, Hearing Transcript at 31:21-25.) Stopinc further claims that choosing one of the arrangements from its original "either/or" claim wasn't related to patentability because the Examiner had already said that *both* arrangements were found in the prior art. (DE 37 at 16.) In other words, choosing one orientation or the other wouldn't have been enough to overcome the prior art, so the real focus of the amendment was adding in the spring element, making anything relating to the mounting/guide components merely tangential.

Although this argument has some intuitive appeal, it has been flatly

17

rejected by authority from the Federal Circuit on very similar facts. In *Integrated Technology Corporation v. Rudolph Technologies*, the Federal Circuit rejected just this argument where the patentee amended its claim to add a limitation that was not necessary to overcome the prior art. 734 F.3d 1352 (Fed. Cir. 2013). There, the patentee added a two limitations to its amended claim – one that was necessary to overcome the prior art and one that wasn't. *Id.* at 1357. The Federal Circuit rejected the patentee's argument that because the second addition was not necessary to overcome the prior art, it was "merely tangential" and therefore the claim scope allegedly sacrificed could be asserted as an equivalent. *Id.* at 1358. Specifically, the court found that although the patentee may not have *needed* to have surrendered the equivalent at issue in order to overcome the prior art, "[t]he dispositive fact is that [it] chose to." *Id.* So, too, did Stopinc. Although Stopinc did not necessarily need to choose an orientation from its original "either/or" claim, it chose to do so at the same time it added the spring element to the mounting components. Stopinc is stuck with that decision. *See also Felix v. American Honda Motor Co.*, 562 F.3d 1167, 1184 (Fed. Cir. 2009) (amendment not tangential where although patentee could have amended the claim to recite only the non-tangential limitation to overcome the prior art, it instead chose to recite both, making both non-tangential); *Lucent*, 525 F.3d at 1218 ("It is not relevant to the determination of the scope of the surrender that the applicant did not need to amend the claims to require

18

performance of steps 1-4 during each pulse-forming iteration in order to overcome the prior art.").

In sum, I find that Stopinc is estopped from proceeding on its infringement claim under the doctrine of equivalents.


*J.W. Hicks' Claim for an Exceptional Case*

Although I ultimately disagree with Stopinc's position, I do not find this to be an exceptional case under 35 U.S.C. § 285 warranting an award of attorneys fees to J.W. Hicks. Stopinc presented thoughtful, reasonable arguments for why it should be allowed to proceed under the doctrine of equivalents. The case was close enough that I ordered oral argument from the parties. (DE 47.) And although I am confident that I have reached the correct result, the answer was not so immediately clear as to "stand[] out from others with respect to the substantive strength of a party's litigating position." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). J.W. Hick's request for attorneys fees will therefore be denied.


*J.W. Hicks' Motion to Strike Luchs' Affidavit*

I am denying J.W. Hicks' motion to strike the Luchs' affidavit. (DE 39.) I don't think it presents the type of material that is so inappropriate as to warrant striking. Instead, J.W. Hicks' arguments go more to the weight as opposed to

the propriety of the affidavit. I will say, however, that I have not given the affidavit any weight because "only the public record of the patent prosecution, the prosecution history, can be a basis" for determining the reason for a claim amendment, and therefore courts "do not consider [a] declaration in determining the reason for the amendment to the claim." *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003). And in any event, the prosecution history is clear enough in this case that I don't need any further explanation of it. So although I don't think the affidavit rises to the level of striking, I don't ultimately find it helpful or persuasive, either.

**Conclusion**

For the above reasons, J.W. Hicks' motion for summary judgment is **GRANTED**, but it's request for attorneys fees is **DENIED**. (DE 35.) The Motion to Strike is also **DENIED**. (DE 39.) Therefore, judgment should be entered in favor of the defendant and against the plaintiff, terminating this matter. In light of this ruling, all other pending motions are **DENIED AS MOOT**.

**SO ORDERED.**

ENTERED: September 17, 2015

                                            s/Philip P. Simon
                                            CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT